Good morning. May it please the Court, my name is Daniel K. Gelb. I'm here with Richard M. Gelb, representing Appellants Coney and Pecone, and Peter Qualia. May it please the Court, I have a motion and a second, and it's on rebuttal. Yes. Thank you very much. The motion judge in this case found tribal issues as to malice and injury. The crux of the appeal here before the Court is that Pecone and Qualia should have the right to a trial as to their loss of an advantage in their professional careers because of malicious statements made by then Dalton Police Chief John Bartels. Bartels' statements, the appellants believe, are defamatory per se, specifically indicating that they were unprofessional and imputing criminal conduct on them with respect to harboring fugitives and obstructing a criminal investigation. The statements implied defamatory facts, making Bartels' statements not simply opinion. And as to the public figure status, which we respectfully contest, does it negate malice in the defamatory case? And it should certainly, respectfully, not be extrapolated over to potential interference with a business relationship claim. Now, I understand that the Court, respectfully, has a command of the facts in the case, and they've been briefed. But the critical to oral argument today, Your Honors, is that Pecone and Qualia built their careers at the Department of Homeland Security and Customs Border Protection as an attorney and internal affairs investigator, respectively. On February 1st of 2008, Pecone and Qualia had an encounter with Bartels outside of Pecone's brother's residence in Dalton, Massachusetts. Pecone furnished a civilian driver's license when she was asked to do so. Qualia furnished his federal government credentials. Counsel, you started off by saying that you assumed that we were familiar with the facts. So why are you bothering to repeat the facts to us? Fair enough, Your Honor. If I may proceed then to what's critical in terms of the defamation claim, is that Bartels has a telephone conversation that the transcript is in the record appendix with Agent Matthew Carbone with the Office of Inspector General. During that telephone conversation, he makes several statements that imply potentially defamatory facts that are not disclosed to Carbone. Namely, that there was a search warrant that was executed in the state of New York in Staten Island at Pecone's residence, and that they had reason to believe that Pecone was harboring her brother and her brother's family and their children that were to respond to writs of habeas corpus at a juvenile court in Berkshire County, Massachusetts. There was no further explanation given as to the validity of that You are talking about law enforcement officials that are speaking with each other on the phone, and that the recipient of that information can appreciate the fact that there must have been probable cause involved for a search warrant to issue, and did not go further to validate whether or not that was in fact the case, which it was not. If you read the transcript and what was said, isn't it pretty much opinion that's pretty well-hedged, as I looked at the transcript, as opposed to fact-based statements? How do you respond to that? Certainly, Your Honor. Well, I think when you look at Milkovich, for example, that you don't have, it's not, an opinion isn't de facto protected speech. When you're looking at the totality of the circumstances, the fact that he does not, when he says that he was in the vehicle sitting there the entire time that Qualley was having the interaction with Chief Bartels in front of the entrance to the brothers' residence, it gives the listener the impression, respectfully, that the two of them are up there in front of the home together trying to thwart a criminal investigation when they were there pursuant to the court's permission out of Berkshire County to install carbon monoxide detectors. He also respectfully, Your Honor, if I may, further indicates that they were not treating him, respecting his authority. He says statements such as, between you and I, I'd like to rattle that family's tree, referring to the Poconis. He makes statements such that he suspects how, that Poconis has been involved in the case since the get-go. How could she not know where the children are? How could she not know where her family is? When you look at the totality of the circumstances and you look at the deliverer of the information and the recipient of the information and what was not disclosed versus what was disclosed, a reasonable, when we're looking respectfully, Your Honor, here at summary judgment, and that there was, and the motion judge found that there was tribal issues of fact as to state law malice, not as to malice in the First Amendment sense. Understood, Your Honor. However, the fact that... Completely different malice standard. Understand that, Your Honor, and I respect that. However, the First Amendment malice, the constitutional malice standard applies to public figure status, and we're contesting that. Well, I understand. You're contesting everything. But get back to Judge Stahl's question. Judge Stahl, what happened here sounds, when you read through the briefs, like these were generally speaking, statements of opinion. Your response to that didn't contest that they were statements of opinion. In fact, your recital of them made them sound exactly like statements of opinion. What it seems to me you're really arguing is that, yes, this was opinion, but it was opinion that was based on some undisclosed facts. And that's a hard argument for me to swallow since it was made perfectly clear to Carbone that this was all based on the confrontation that had taken place between these plaintiffs and the police chief at the brother's residence in Dalton. Respectfully, Your Honor, I want to make sure that I'm not misstating. I'm not saying that I believe that these are qualified as opinion statements. What I'm saying is... No, no. I didn't say that you said that. I'm saying your recital of the facts leads me to believe that Judge Stahl's characterization of them as opinion is perfectly correct. No, what I'm saying, respectfully, Your Honor, is that they're not opinion because what the facts are is that he did not disclose that Piconi was in the vehicle during this interaction in front of the home. He did not disclose whether or not the representation made by New York State Child Protective Services to DSS was, in fact, an accurate and true representation vis-a-vis the search warrant, which there was no search warrant. But that twists the standard. The standard isn't whether everything was disclosed, but whether it can reasonably be found that the opinions which were voiced were based on undisclosed facts. And I'm struggling. I mean, it's pretty clear from the transcript of that interview that the Dalton police chief gave what admittedly may have been a slanted view, but his view of what occurred in that 45 minutes or in that period of time when he and the two plaintiffs were at the premises. Your Honor, what he doesn't disclose to Carbone is that, and I don't mean to be too repetitive here, is that he doesn't disclose to Carbone exactly the roles that people were playing in front of that home. He doesn't disclose that Piconi did not furnish a governmental issued ID, that he doesn't disclose that the reason why Qualia furnished a governmental ID is because he was at a federal customs border protection control agency. And I'm suggesting to you the test isn't what, and I don't want to be argumentative, the test isn't whether he gave a completely accurate blow-by-blow account. The question was whether you can reasonably say that his opinions were based on some undisclosed fact. And the basic basis for his opinion, he disclosed pretty bluntly the facts on which he based his opinion. That opinion may have been totally wrong because of, because there were other facts. But that's not the test that Milkovich sets up. Did he base his opinion, base his opinion on some undisclosed facts? What facts were there supporting his opinion other than what he told Carbone about? That he didn't like the, well, we believe that the record is, suffices to say that he, well, that he didn't disclose the circumstances surrounding the search in New York. He didn't disclose the circumstances surrounding why a government issue ID was furnished. From the very beginning of that transcript, Your Honor, with Carbone, Carbone says in the very beginning, is under the impression, well, we don't want to have people thwarting law enforcement. And respectfully, Your Honor, I believe that under the Milkovich standard, as well as under the controlling case law from the United States Supreme Court, is that we have a tribal issue of fact as to why potentially defamatory undisclosed facts, why the information that was withheld was withheld. But that's not, respectfully, for the motion judge to make a determination on. Whether or not something can be an opinion or not, under these sets of circumstances, when you look at the analysis of whether you have a particular audience member, the medium in which that was communicated, he has a conversation with Detective Smith of the Massachusetts State Police, which is laced with profanity, about how much they feel that this case is going to get squashed. And at the end of it, it says, go do something, go get someone fired. He says, yeah, and then makes a telephone call to OIG. We believe that there's intent here, respectfully, and that they should be able to have a trial to prove that. Thank you. If I may, just one last sentence, Your Honor. You have time. Thank you. Is that the First Amendment respectfully protects the free flow of information. It doesn't protect the free flow of malice. May it please the Court, I'm David Lawless of Robinson Donovan on behalf of Defendant John W. Bartels, Jr. As the Court has already identified, Chief Bartels gave his opinion based on undisclosed facts. Excuse me, based on disclosed facts. The fact of the matter is that there was a search that was conducted at Colleen Piconi's home by the New York City Police Department. That was disclosed. But by the time he made the phone call, he knew that they were there properly. He knew that the court had told them to go to the house, that the reason was set forth to see if the house was fit for these children, if she was given custody. So he knew all that. He knew that his basic premise upon which he made the call was not correct. And so given that and the connection with the state trooper, doesn't that indicate that he had some direct malice and some reason to show these people from New York who were high-ranking people like federal officials that they couldn't push around this small-town cop? Your Honor, I begin by saying first that malice in the sense of spite or ill will is irrelevant to the issues on which this case turns at the summary judgment stage. One is allowed to express a spiteful opinion as long or to express an opinion with some level of malice in the sense of ill will, as long as that opinion is based on disclosed, non-defendatory facts, which is what happened here. The district court recognized and the defendant has never argued to the contrary that if malice in the sense of spite or ill will was fatal to the defendant's motion for summary judgment, it would have been and should have been denied. But it's irrelevant to the issue of whether or not Chief Bartels expressed an opinion. I would also note, just secondarily, that the purpose for the phone call wasn't related to a plaintiff's attempt to gain entry for the purpose of installing a carbon monoxide detector, et cetera. As such, what was expressed was a level, and I think the transcript and the audio recording speak for themselves, a level of frustration at what Chief Bartels expressed as his opinion, that the plaintiffs were unprofessional. And again, his belief that one or both of the plaintiffs may, again, may know the whereabouts of Lewis and Helena Pecone's children. But again, he disclosed the basis for his opinions. As I said, the New York City Police Department did search Helene Pecone's home looking for those children. It is true that Lewis Pecone and his wife were summonsed to juvenile court and didn't appear, but his sister, her boyfriend, I believe it was two or three lawyers, and one or two experts did appear. So a raft of people showed up in juvenile court, none of whom were the individuals who were at summons. The inferences that are to be drawn from the facts that Chief Bartels disclosed are compelling. And if you... Well, you can pile inference on inference, but I'm not so sure that they're that compelling, because as I said in the beginning, by the time he made the phone call, he had the actual facts in hand, and he knew that they were there for a legitimate purpose. So why make the phone call? You can argue unprofessional conduct perhaps on both parts, but I'm sort of taken by that conversation with the trooper. And I'd like some comment on that. Again, Your Honor, I think the primary point is that even if Chief Bartels was motivated by malice in the state law sense, summary judgment properly entered in his favor, because it's not relevant to the issue of whether or not he expressed an opinion, and it's not relevant. Put another way, as I understand your argument, I'm not saying I agree with it, but as I understand it, you're saying if these were statements of opinion not based on undisclosed facts, they're protected by the First Amendment and malice is irrelevant. In the state law sense, the word malice, yes, Your Honor. That is my position. Well, is malice in any sense relevant if these are protected statements of opinion? Not if they're protected by the First Amendment. Unless there are any further questions, I'd just like to note in closing that the plaintiffs have made no effort either before this Court or to the best of my recollection before the Court to issue a material fact as to their burden of proof, that is to say if they're treated as public officials, as I believe they clearly must be, they haven't marshaled facts or disputed issue of fact on the issue of whether or not Chief Bartels acted with actual malice in the constitutional sense, and they also haven't marshaled an issue of disputed fact on the issue of whether he was negligent in making the statements at issue. Thank you very much. Thank you, Honors. In rebuttal, we respectfully disagree. We believe that we have marshaled facts for tribal issues on, in terms of the public figure status and constitutional malice issue. Qualia specifically tells Bartels in front of the House that they are not there on official business. This is a purely private family matter, and when you look at all of the cases that are cited, I believe all of them if not 99% of them respectively, you're dealing with not a media defendants where there is a public forum where both sides can state their claim in terms of what they believe the facts to be. Bartels knew that he would call OIG to have a confidential investigation. He was furious with the fact that the case wasn't going the way that he felt it should go, and he had that, and the reason respectfully I believe that that conversation with Smith is so important is because it formulates a basis for a tribal issue as to what his state of mind was. What intent did he have to make that phone call? What intent did he have to withhold the fact that McHoney was in the vehicle, that she was compliant with him? And I respectfully direct the Court to listening to those transcripts in the record appendix, being able to tell that context what that phone call was like, and that's something the jury should be able to have the opportunity to hear. And I respectfully believe it would be a very dangerous precedent for the Court to say that just because somebody can say whatever they want because if they believe someone has a public figure status, that doesn't make a difference in terms of constitutional malice and you can't have actual malice. And we're not saying that this is just purely based opinion. Like I believe the case law indicates that saying that someone is a liar, I believe someone is a liar, qualifying that as a preface, does not de facto protect that type of a statement when it's based on falsity, which we believe these were. Thank you.